UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CHRISTOPHER D GREEN, JR | CIVIL ACTION NO. 23-1082 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| UNITED PARCEL SERVICE INC, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are two Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed by Defendants United Parcel Service, Inc. ("UPS") and Local 568 International Brotherhood of Teamsters ("IBT 568") (collectively, "Defendants"), respectively. See Record Documents 21 & 31. Plaintiff Christopher D. Green, Jr. ("Green") filed an opposition to each Motion. See Record Documents 25 & 35. UPS and IBT 568 replied to Green's oppositions to their Motions. See Record Documents 30 & 40. For the reasons stated below, both Motions are **GRANTED**. Therefore, Green's claims against Defendants are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

Green commenced this civil action pursuant to Section 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a), and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. See Record Document 1 at ¶ 1. The parties agree that this action is known as a hybrid 301 action. See Record Documents 21-1 at 6, 25 at 4, & 31-1 at 7. This is a wrongful discharge case arising under a collective bargaining agreement ("CBA"). See Record Document 31-1 at 6. Green was an employee of UPS and a member of IBT 568. See Record Document 1 at ¶ 2. He began employment with

UPS in January 2015 as a package sorter and later became a package car driver in 2020. See id. at ¶¶ 9, 10. On February 23, 2023, UPS held a meeting to discuss Green's continued failure to follow proper methods and previous instruction. See Record Document 35-7. On or about February 23, 2023, Green received a written letter that informed him of this meeting and served as an intent to discharge. See id.; see also Record Document 1 at ¶ 18. On March 15, 2023, Green was given verbal notice of termination and was told to leave the premises. See Record Document 1 at ¶ 11. On March 18, 2023, he grieved the February 2023 notice and March 15th verbal notice of discharge. See id. at ¶ 34. On March 29, 2023, IBT 568 provided a written statement regarding the status of Green's grievance for the verbal notice of termination of his employment. See id. at ¶ 23. In May 2023, Green claims IBT 568 met with UPS management to discuss his grievances; however, he was later informed that his grievance had not been heard. See id. at ¶ 24.

Green submits two claims for relief: (1) UPS breached the CBA and (2) IBT 568 breached its duty of fair representation. See id. at 6, 8. He claims UPS breached the CBA by (1) failing to give him proper written notice of discharge; (2) failing to give him proper warning in advance of an escalation of discipline; (3) having no just cause to issue a warning or to discharge; and (4) failing to discharge in writing within 10 days of expiration of the grievance period. See id. at ¶ 27. Green claims IBT 568 breached its duty because there were multiple ways it could have presented his grievance to have him reinstated. See id. at ¶ 37. Instead, he alleges that IBT 568 completely abandoned its role as representative at the meeting with UPS management in May 2023. See id. at ¶ 44. Despite having informed Green that his grievance would be presented, the president of

2

IBT 568 informed him that his grievances were not heard. See id. Green claims that when he inquired, the president stated that UPS management did not want to talk about it. See id. at ¶ 45. He argues the refusal to discuss a meritorious grievance is not a rational reason for IBT 568 to abandon the grievance. See id. He alleges IBT 568 breached its duty of fair representation and acted arbitrarily and in bad faith. See id. at ¶ 46.

## LAW AND ANALYSIS

**I. Rule 12(c) Standard.**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "In evaluating whether a plaintiff's complaint survives a motion for judgment on the pleadings, [the court] is limited to reviewing: '(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters for which judicial notice may be taken under Federal Rule of Evidence 201.'" Jordan Props., Ltd. v. City of Cleveland, Miss., No. 23-60625, 2024 WL 3771453, at *1 (5th Cir. Aug. 13, 2024) (quoting Walker v. Beaumont Indep. Sch. Dist., 938 F. 3d 724, 735 (5th Cir. 2019)).

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008). See Jordan Props., 2024 WL 3771453, at *1. Under the Rule 12(b)(6) standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). If a pleading only contains "labels and conclusions" and "a formulaic

recitation of the elements of a cause of action," the pleading is deficient. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Courts must accept all factual allegations in the complaint as true. See id. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F. 3d 500, 503 (5th Cir. 2014).

Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id.

**II. Hybrid 301 Action.**

A hybrid 301 action "comprises two distinct causes of action, one against the employer, and the other against the union." Lee v. United Parcel Serv., No. 03-2174, 2004 WL 385059, at *2 (E.D. La. Feb. 27, 2004). Section 301 of the LMRA "provides an employee with a federal cause of action against his employer for breach of the [CBA]." Id. The cause of action "against the union for breach of the duty of fair representation is implied under the scheme of the National Labor Relations Act." Id. (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165, 103 S. Ct. 2281, 2290 (1983)). These two causes of action are "'inextricably interdependent,' and have come to be known as a hybrid § 301/duty of fair representation suit." Id. (citing United Parcel Serv. Inc. v. Mitchell, 451 U.S. 56, 101 S. Ct. 1559 (1981)).

In DelCostello, the Supreme Court held that a plaintiff-employee will be successful in an action against either their employer or union if they can "show that their discharge was contrary to the contract" and that the union breached its duty. Id. at *2–3. (citing DelCostello, 462 U.S. at 166, 103 S. Ct. at 2291) (citations omitted)). See Jaubert v. Ohmstede, Ltd., 574 Fed. Appx. 498, 501 (5th Cir. 2014); see also Bodin v. Morton Salt, Inc., No. 22-01863, 2023 WL 5761332, at *6 (W.D. La. Sept. 6, 2023). The Fifth Circuit has held that "'the indispensable predicate for a § 301 action in this situation is a fair representation claim against the union.'" Jaubert, 574 Fed. Appx. at 501. If a union does not breach its duty, a court need not consider whether the employer breached the CBA. Id.

To prevail on a claim for breach of the duty of fair representation against a union, "an employee must show that the union's conduct 'was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process.'" Id. (quoting Landry v. The Cooper/T. Smith Stevedoring Co., 880 F. 2d 846, 852 (5th Cir. 1989)). Under this duty, a union is obligated "'to investigate a grievance in good faith' and 'prosecute a grievance with reasonable diligence unless it decided in good faith that the grievance lacked merit or for some other reasons should not be pursued.'" Id. Additionally, a "'substantive examination of a union's performance [] must be highly deferential….'" Id. at 502. A union's negligence or error in judgment "is not enough to sustain an unfair representation claim." Id. See Landry, 880 F. 2d at 852; see also Connally v. Transcon. Lines, 583 F. 2d 199, 203 (5th Cir. 1978).

**III. Summary of the Motions.**

UPS's Motion argues that because Green did not appeal his February 2023 discharge notice until March 18, 2023, he did not timely appeal under the CBA. See Record Document 21-1 at 9. Because UPS sought to discharge Green for a noncardinal infraction, UPS states that the February 2023 discharge letter gave Green notice of UPS's intent to discharge him, while he was allowed to remain on the job. See id. at 10. However, Green did not appeal his February 2023 discharge notice within 10 days. See id. As a result, UPS contends it had the option under the CBA to administer the discharge within 10 days after March 5, 2023, which was on or about March 15, 2023. See id.

UPS submits that Green cannot prevail in his hybrid 301 action without establishing that UPS breached the CBA and IBT 568 breached its duty of fair representation. See id. at 11. UPS argues he cannot establish that IBT 568 breached its duty of fair representation because he failed to timely appeal his discharge notice. See id. at 13–14. Alternatively, as to the merits of his grievance, UPS asserts that Green has failed to plausibly allege IBT 568 acted arbitrarily or in bad faith in not pursuing his grievance. See id. at 15.

Additionally, UPS states the Green cannot establish its liability for breaching the CBA. See id. at 16. First, UPS contends it actually discharged Green on March 15, 2023. See id. Second, UPS claims he waived the formal and substantive defects in his discharge notice by failing to timely exhaust his remedies through the CBA's grievance-arbitration process. See id. at 18. Ultimately, UPS requests that the Court grant its Motion and dismiss Green's hybrid 301 action. See id. at 20.

Green opposes, arguing the pleadings do not establish that any written warning, regardless of the date issued, was sustained and thus a valid predicate for subsequent escalation of disciplinary action. See Record Document 25 at 8. He claims he can establish IBT 568 breached its duty of fair representation. See id. at 11. He asserts that the failure to grieve a notice of intent to discharge does not bar a grievance for reinstatement from a subsequently administered discharge. See id. Green cites to CBA Articles 7, 52(A), and 52(C) and the Letter of Understanding to support his argument. See id. He contends there is a difference between a discharge and an intent to discharge because a discharge severs the employment relationship while an intent to discharge does not. See id. at 12. He submits there is nothing prohibiting him from grieving the subsequently administered discharge even though he did not grieve the intent to discharge. See id. at 14. Additionally, Green argues that abandoning a grievance because the employer does not want to talk about it falls outside the scope of reasonableness. See id. at 15. He claims IBT 568 acted with reckless disregard of his rights as a member of the union. See id. at 16.

Green also claims that UPS is liable for breach of the CBA by (1) failing to issue a written warning letter/notice, which is the requisite predicate for next-level discipline; (2) failing to give Green proper written notice of intent to discharge; (3) failing to give Green written notice of administered discipline; and (4) failing to administer the discipline of discharge within the specified 10-day period. See id. at 16–17. He concludes that his failure to grieve the notice of intent to discharge is irrelevant. See id. at 23. Ultimately, he claims that construction of all the pleadings, interpreted in the light most favorable to Green, shows that he has established that UPS violated multiple provisions of the CBA

7

and IBT 568 had no objective, reasonable basis for abandoning his grievance. See id. Thus, Green submits UPS's Motion should be denied. See id.

UPS replies, reiterating that the ultimate issue is whether Green timely appealed his discharge. See Record Document 30 at 2. UPS argues that Article 52(C) of the CBA requires only one written notice for all discharges, regardless of whether the discharge is for a cardinal or noncardinal infraction. See id. at 3. Therefore, UPS asks the Court to reject Green's argument that two written discharge notices are required for noncardinal infractions. See id. at 6. Additionally, UPS asserts that Green's right to request an investigation and seek reinstatement is not absolute, nor does it require IBT 568 to take any particular investigative action. See id. at 9. UPS argues that Green's use of extrinsic evidence in his opposition is irrelevant. See id. at 10. UPS restates that it administered Green's discharge within 10 days of his failure to appeal his February 2023 intent to discharge letter; therefore, its Motion should be granted. See id. at 11.

IBT 568 also filed a Motion for Judgement on the Pleadings, borrowing heavily from UPS's Memorandum in Support its Motion. See Record Document 31-1 at 6. IBT 568 agrees that under the CBA, Green should have appealed his discharge notice within 10 days. See id. at 8. Since he did not appeal his discharge notice until March 18, 2023, IBT 568 argues that Green did not timely appeal under the CBA. See id. at 10. Additionally, IBT 568 asserts that Green cannot establish it breached its duty of fair representation. See id. at 14. Because he failed to timely appeal his discharge notice, IBT 568 claims it did not act arbitrarily or in bad faith in choosing to not pursue the grievance regarding Green's discharge. See id. at 15. Alternatively, as to the merits of his grievance,

IBT 568 contends he has failed to plausibly allege it acted arbitrarily or in bad faith in not pursuing his grievance. See id. at 18.

Furthermore, IBT 568 submits that Green cannot establish UPS's liability for breaching the CBA. See id. at 19. IBT 568 agrees with UPS that Green was actually discharged on March 15, 2023. See id. Moreover, IBT 568 states that he waived the formal and substantive defects in his discharge notice by failing to timely exhaust his remedies through the CBA's grievance-arbitration process. See id. at 21. Therefore, IBT 568 requests the Court to grant its Motion and dismiss Green's hybrid 301 action. See id. at 23.

Green's opposition borrows heavily from his previous opposition submitted in respond to UPS's Motion. See Record Document 35 at 5. Green states that one of the major additions to his second opposition is found in footnote 10, where he distinguishes two cases relied upon by IBT 568. See id. After reviewing the opposition, the Court assumes he meant footnote 7 instead of 10. In footnote seven, Green reiterates the difference between grieving the termination of employment versus the notice of intent to terminate. See id. at 14, fn 7. Throughout his opposition, Green restates he can establish that IBT 568 breached its duty of fair representation and UPS breached the CBA. See id. at 12, 19.

IBT 568 replied, asserting that the Court should resolve this contractual issue as a matter of law in IBT 568's favor, grant its Motion, and dismiss Green's Complaint with prejudice. See Record Document 40 at 1. Additionally, IBT 568 states that even if the Court determines that the CBA requires UPS to provide two notices of noncardinal offenses before discharging an employee, Green has failed to plausibly allege that IBT

9

568 acted arbitrarily or in bad faith by not pursuing his grievance. See id. Without such an allegation, IBT 568 submits that Green cannot meet his burden of establishing a viable cause of action for breach of the duty of fair representation. See id. Throughout its reply, IBT 568 reiterates prior arguments made by Defendants.

**IV. Analysis.**

To prevail on his two claims against UPS and IBT 568, Green must plausibly allege that IBT 568 breached its duty of fair representation and UPS breached the CBA. The case law is clear that Green's hybrid 301 action is only successful if his Complaint plausibly alleges both claims against Defendants. The second claim against IBT 568 serves as a predicate for the hybrid 301 action. The Court finds that Green's action fails because his Complaint does not plausibly allege IBT 568 breached its duty of fair representation.

Green alleges that UPS management's refusal to discuss his meritorious grievance is not a rational reason for IBT 568 to abandon it. See Record Document 1 at ¶ 45. Additionally, he claims IBT 568 breached its duty of fair representation, thus violating § 9(a) of the NLRA, because it assured Green it would pursue his grievances through a hearing but then later abandoned them because UPS management did not want to talk about it. See id. at ¶ 46. Thus, he concludes IBT 568 acted arbitrarily and in bad faith. See id. The Court finds that these allegations do not overcome dismissal because they are conclusory and do not support a claim for relief.

Besides IBT 568's discussion with UPS management, Green does not have sufficient proof at this stage of the proceeding to support his second claim for relief. In its

discretion, IBT 568 decided to stop pursuing Green's grievances because they were untimely under the CBA. On March 18, 2023, he filed a grievance over the February 2023 written notice of discharge and the March 15, 2023 verbal notice of discharge. IBT 568, in good faith, decided not to pursue his February 2023 grievance because it was untimely. Under the relevant case law, IBT 568 has the discretion not to pursue a grievance, as long as it does not act arbitrarily, discriminatory, or in bad faith. "A union's investigation need not be perfect to be adequate." Jaubert, 574 Fed. Appx. at 503. Even though IBT 568's "conduct may not amount to model representation," Green cannot sufficiently demonstrate the conduct was arbitrary, discriminatory, or in bad faith. Id. His allegations are legal conclusions that do not overcome the dismissal standard.

Additionally, Green alleges that had IBT 568 presented his grievance, he would have been successful, as there was strong precedent for this type of warning to be rescinded as resolution of a grievance. See id. at ¶ 39. He claims that if the warning letter was rescinded, there would have been no predicate for the notice of intent to discharge or any subsequent discipline, and thus, the discharge would have been rescinded. See id. These allegations are speculative. Green merely offers a hypothetical situation that falls below the dismissal standard.

The Court notes that a discussion of Green's first claim for relief against UPS is not necessary because he fails to plausibly allege his second claim for relief against IBT 568, which serves as a predicate to his action. See Jaubert, 574 Fed. Appx. at 501; see also Bodin, 2023 WL 5761332, at *6. As stated previously, his second claim for relief fails because it is conclusory and speculative; thus, he ultimately fails to successfully assert his hybrid 301 action against both UPS and IBT 568.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that both Motions for Judgment on the Pleadings (Record Documents 21 & 31) are **GRANTED**. Therefore, Green's claims against Defendants are hereby **DISMISSED WITH PREJUDICE**.

A Judgment accompanying this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 30th day of January, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE